IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

OLIN CORPORATION,

                Plaintiff,

v.

CERTAIN UNDERWRITERS AT LLOYD'S
LONDON and CERTAIN LONDON MARKET
INSURANCE COMPANIES,

                Defendants.

---------------------------------------------------------------X

Civil Action No. 18-cv-8197

**DEFENDANTS CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND CERTAIN LONDON MARKET INSURANCE COMPANIES' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT ........................................................................................................................5

    I.   The 2009 Settlement Agreement is Unambiguous and its Terms and Conditions Should be Applied as a Matter of Law ..................................................5

    II.   Under the Express Terms of the 2009 Settlement Agreement A Significant Portion of Olin's Morgan Hill Claims is Released ..................................................6

    III.   There is No Justiciable Controversy Related to the Morgan Hill Site Regarding the London Market Insurers' 1953-1970 Policies Because Olin's Non-Released Damages, When Properly Allocated, Do Not Trigger Those Policies ..................................................................................................................7

    IV.   The 2009 Settlement Agreement Has Not Been Altered by Subsequent Court Decisions ..................................................................................................................9

CONCLUSION ...................................................................................................................13

# TABLE OF AUTHORITIES

                                                                        **Page(s)**

*Consolidated Edison Co. of N.Y. v. Allstate Ins. Co.*,
    98 N.Y.2d 208 (2002) .......................................................................................................... 8

*Gelfert v. Nat'l City Bank of New York*,
    313 U.S. 221 (1941) ............................................................................................................ 9

*Hercules, Inc. v. AIU Ins. Co.*,
    784 A.2d 481 (Del. 2001) ................................................................................................. 10

*In re Matter of Viking Pump, Inc.*
    27 N.Y.3d 244 (2016) ..................................................................................... 2, 4, 10, 11, 13

*Mallad Constr. Corp. v. County Fed. Sav. & Loan Assn.*,
    32 N.Y.2d 285 (1973) ........................................................................................................ 5

*Olin Corp. v. Certain Underwriters at Lloyd's, London*,
    468 F.3d 120 (2nd Cir. 2006) ........................................................................................... 11

*Olin Corp. v. Insurance Co. of North America*,
    221 F.3d 307 (2nd Cir. 2000) ...................................................................................... 10-11

*Olin Corp. v. Lamorak Ins. Co.*,
    No. 84-CV-1968 (JSR), 2018 WL 1901634 (S.D.N.Y. Apr. 18, 2018) ............. 1-2, 4-5, 8-9

*Powell v. Omnicom*,
    497 F.3d 124 (2d Cir. 2007) ............................................................................................... 9

*Ronnen v. Ajax Elec. Motor Corp.*,
    88 N.Y.2d 582 (1996) ........................................................................................................ 9

*Stonehill Capital Mgt. LLC v. Bank of the W.*,
    28 N.Y.3d 439 (2016) ........................................................................................................ 5

## INTRODUCTION

As this Court is well aware from the proceedings that took place in *Olin Corp. v. Lamorak Ins. Co.*, No. 84-CV-1968 (JSR), Plaintiff Olin Corporation ("Olin") and the London Market Insurers that subscribed to various historical excess insurance policies of Olin, entered into a July 31, 2009 settlement agreement ("Settlement Agreement"). Under the express terms and conditions of that Settlement Agreement, Olin agreed not only to release the London Market Insurers from all liability related to approximately 114 sites but Olin also agreed to a significant series of partial releases of various liabilities related to a smaller number of other sites (including the Morgan Hill, CA site). As this Court also previously recognized, for the non-released pollution claims, the parties also agreed to a specific *pro rata* allocation formulae to be applied in future claim submissions to avoid further protracted litigation. *Olin Corp. v. Lamorak Ins. Co.*, No. 84-CV-1968 (JSR), 2018 WL 1901634, at *15 n. 15 (S.D.N.Y. Apr. 18, 2018).

Despite these terms and conditions, in the present action Olin again attempts to avoid the promises it made to the London Market Insurers in 2009 in a blatant effort to improperly increase its insurance recovery. Specifically, Olin seeks "all-sums" coverage for its pollution claims arising from its Morgan Hill site from the 1953 to 1970 London excess policies - completely ignoring the Settlement Agreement's future claim *pro rata* allocation formulae.

However, the non-released portions of Olin's Morgan Hill Claims do not present a justiciable controversy because its property damages claims do not impact any of the London Market Insurers' policies when: 1) all costs incurred by Olin prior to July 31, 2009 are deducted from the claims; 2) an additional $10 million deductible is applied per claim; and 3) the remainder of Olin's claims are allocated *pro rata* equally over the entire period of time that any operations took place on any part or parts of the real property Olin owned ("Allocation

1

Agreement") (all three of which are required by the Settlement Agreement).

Subsequent court decisions including *In re Matter of Viking Pump, Inc.* 27 N.Y.3d 244 (2016) do not alter the parties' obligations pursuant to the binding 2009 Settlement Agreement and the Allocation Agreement contained therein as Olin may contend. Accordingly, the London Market Insurers respectfully ask this Court to enforce the terms and conditions contained in the Settlement Agreement, as agreed by the parties in 2009, and enter an Order dismissing Olin's action because its claim for coverage is simply not justiciable when allocated *pro rata* equally over the entire period of time that any operations took place on any part or parts of the real property Olin owned at Morgan Hill.

## BACKGROUND

In 2009, in an effort to resolve the protracted litigation over insurance coverage for Olin's various pollution liabilities, the London Market Insurers and Olin entered into a Settlement Agreement that addressed both Olin's pending claims and any future claims it may assert against the London Market Insurers. London Market Insurers' Statement of Material Facts ("LMI Statement of Material Facts"), ¶ 6. The Settlement Agreement was the jointly drafted product of arms-length negotiations between Olin and the London Market Insurers, and the parties agreed that it constituted a binding contract governed by New York law. *Id.* at ¶ 7-8. As this Court has previously recognized, Olin does not dispute that the Settlement Agreement is a binding, enforceable contract. *Olin Corp. v. Lamorak*, at *19.

Under the Settlement Agreement, the London Market Insurers agreed to pay Olin their respective several shares of more than $59 million. LMI Statement of Material Facts, ¶ 9. As part of its consideration, Olin agreed to fully release the London Market Insurers from all claims related to 114 sites, which were referred to as the "DJ Pollution Claims." *Id.* at ¶ 9-10.

Olin also agreed to certain significant releases for any other future pollution claims. *Id.* at ¶ 11. First, Olin agreed to release the London Market Insurers from any claims against certain policies referred to as the "Buy-Back Policies," which constituted policies that attached below $1.3 million. *Id.* at ¶ 12.

Olin also agreed to deduct from future Pollution Claims, as defined by the Settlement Agreement (which includes the Morgan Hill Claims), any payments made by Olin prior to the Settlement Agreement's execution date on July 31, 2009. *Id.* at ¶ 13. Olin further agreed to deduct from any future Pollution Claims the next $10 million from its losses. *Id.* at ¶ 14.

The London Market Insurers and Olin also agreed to certain changes to the terms and conditions of the London Policies regarding the allocation of future third-party pollution claims relating to property damage. *Id.* at ¶ 15. Specifically, Olin agreed that any coverage under the London Policies for any future third-party Pollution Claims shall be allocated: 1) *pro rata* equally over the entire period of time that any operations took place on any part or parts of the real property Olin owned; or 2) *pro rata* equally over the entire period of time that waste was disposed of or arranged to be deposed of by Olin at sites not owned or operated by Olin. *Id.* at ¶ 17.

This Settlement Agreement resolved a major disagreement regarding how to allocate covered third-party property damage claims that involved damage that took place over many years or decades. *Id.* at ¶ 2; *see also* Affidavit of Simon Wright at ¶ 7. The London Market Insurers' position had been that property damage should be allocated *pro rata* over the entire period of time that damage took place. LMI Statement of Material Facts, ¶ 3; *see also* Affidavit of Simon Wright at ¶ 8. Olin had argued that the London excess policies allowed for a

3

compressed allocation of damages and/or recovery of its claim from a single year. LMI Statement of Material Facts at ¶ 4; *see also* Affidavit of Simon Wright at ¶ 9.

Subsequent to entry of the Settlement Agreement and the London Market Insurers' payment of the settlement sum, in 2010 Olin dismissed its claims against the London Market Insurers in *Olin Corp. v. Lamorak Ins. Co.*, No. 84-CV-1968 (the "1984 Action").

On December 16, 2016, Olin provided a supplemental notice of the Morgan Hill Claims wherein it advised it was evaluating an all-sums recovery based upon the New York Court of Appeals decision in *Viking Pump*. LMI Statement of Material Facts, ¶ 22, 24. Olin alleged it had incurred approximately $66.6 million in costs as of September 30, 2018 for which it was seeking partial coverage. *Id.* at ¶ 22. As required by the Settlement Agreement, Olin advised that $18.9 million of these costs were incurred after the Settlement Agreement was signed on July 31, 2009 and thus not released. *Id.* Olin has also acknowledged that an additional $10 million deductible must be removed from its claim. *Id.* at 26. Accordingly, Olin seeks $8.9 million from the London Market Insurers.

In response, the London Market Insurers advised that the Settlement Agreement's Allocation Agreement must also be applied which would result in no amount reaching above the $1.3 million attachment point of the remaining non-released London excess policies. *Id.* at ¶ 25.

Olin's excess insurance policies subscribed to by the London Market Insurers named in this action began on January 1, 1953 and terminate on or before January 1, 1970. *Id.* at ¶ 28. The lowest amount at which any of the London Policies attach is $1,300,000. *Id.* at ¶ 29. Operations took place at the Morgan Hill Site at least from 1956 to 1996. *Id.* at ¶ 30. When Olin's $8.9 million damages relating to the Morgan Hill Site are allocated equally across the 40 years during which operations took place at the Morgan Hill Site, the annual allocation of damages totals

$222,500 and, therefore, does not reach any of the London excess Policies. Each of the 1961 to 1970 policies that contain Non-Cumulation Clauses in this litigation are three-year policies, so the allocation per three-year policy is $667,500, also well below the $1,300,000 threshold. Accordingly, there is no justiciable controversy as to the London Policies as related to the Morgan Hill Site.

## ARGUMENT

### I. The 2009 Settlement Agreement is Unambiguous and its Terms and Conditions Should be Applied as a Matter of Law

The Settlement Agreement between Olin and the London Market Insurers is a written enforceable contract governed by New York law. *Olin Corp. v. Lamorak* 2018 WL 1901634 (S.D.N.Y. Apr. 18, 2018), at *19 (finding the specific performance remedy under New York law was necessary to prevent Olin's breach of the Settlement Agreement's Judgment Reduction Clause); *see also* LMI Statement of Material Facts, ¶ 7-8. Indeed, Olin itself does not dispute the Settlement Agreement is an enforceable binding and unambiguous contract. Dkt. 12; LMI Statement of Material Facts, ¶ 23. Indeed, in presenting the Morgan Hill Claims to the London Market Insurers, LMI, Olin itself applies several terms of the Settlement Agreement. LMI Statement of Material Facts, ¶ 22-23.

Accordingly, it is Olin's burden to come forth with evidentiary proof that raises a triable issue of fact as to the non-enforceability of any provision in the Settlement Agreement. *See Stonehill Capital Mgt. LLC v. Bank of the W.*, 28 N.Y.3d 439, 448 (2016); *Mallad Constr. Corp. v. County Fed. Sav. & Loan Assn.*, 32 N.Y.2d 285, 290 (1973). Olin cannot do so because there is none.

## II. Under The Express Terms of the 2009 Settlement Agreement a Significant Portion of Olin's Morgan Hill Claims is Released

In the 2009 Settlement Agreement, Olin released a significant portion of its Morgan Hill Claims. Specifically, Olin agreed to deduct from its losses any payments made by Olin before the Settlement Agreement's execution date of July 31, 2009. LMI Statement of Material Facts, ¶ 13.[1] Olin also agreed to deduct from its losses the additional sum of $10 million for each pollution claim. *Id.* at ¶ 14.

In correspondence dated December 16, 2016, Olin provided supplemental notice of the Morgan Hill Claims to the London Market Insurers. *Id.* at ¶ 22. Olin alleged it had incurred approximately $66.6 million in costs related to the Morgan Hill Site as of September 30, 2016. *Id.* However, recognizing that the Settlement Agreement controls London Market Insurers' obligations for the Morgan Hill Claims, Olin deducted $47.7 million of its payments at this site that were incurred prior to the execution of the Settlement Agreement and thus released, and stating that $18.9 million of its costs were incurred post-Settlement Agreement and thus not released. *Id* at ¶ 22-23. Olin has also acknowledged, as required by Section VII(B)(ii) of the Settlement Agreement, an additional sum of $10 million is deducted from each loss. *Id.* at ¶ 27. Accordingly, even assuming for purposes of this motion only that Olin's Morgan Hill Claims are covered, it is a single occurrence, and the alleged past costs incurred reported are accurate, as of the aforementioned notice, $8.9 million in damages would remain non-released.

---

[1] The Settlement Agreement also released the Buy-Back Policies, which attach below $1.3 million; Olin is not seeking coverage under the released Buy-Back Policies. *Id.* at ¶ 12; Dkt 12.

6

## III. There is No Justiciable Controversy Related to the Morgan Hill Site Regarding the London Market Insurers' 1953-1970 Policies Because Olin's Non-Released Damages, When Properly Allocated, Do Not Trigger Those Policies

When Olin's non-released damages related to the Morgan Hill Site are allocated via *pro rata* time on the risk allocation over the entire period that operations took place at the Morgan Hill Site, none of the London excess policies are impacted.

For partially released pollution claims, the express terms of the Settlement Agreement provide that property damages are to be allocated using a specific *pro rata* allocation formulae. *Id.* at ¶ 17. Section VII(D) of the Settlement Agreement, titled "**Allocation Agreement**" (emphasis added) provides, in pertinent part, that property damage losses shall be allocated as follows:

> Provided that it is agreed between the Parties or otherwise determined that there is coverage under the London Policies, Olin and London Market Insurers agree that with respect to any future third party Pollution Claim relating to property damage that is not the subject of a release in this Agreement the following allocation methods shall be used:
>
> (i) For property damage losses relating to Pollution at real property owned at any time by Olin, the property damage relating to any Pollution Claim shall be allocated pro rata over the entire period of time that any operation took place on any part or parts of the real property Olin owned.
>
> (ii) (For property damage losses relating to Pollution at real property at which Olin disposed of or arranged for the disposal of any waste that does not otherwise fall within the scope of Section VII Paragraph D.(i) above, the property damage relating to any Pollution Claim shall be allocated pro rata equally over the entire period of time that any waste was disposed of or arranged to be disposed of at any part or parts of the subject real property by, on behalf of, at the direction or request of Olin from the commencement of such activities until their complete cessation.
>
> *Id.*

This Court previously recognized how this *pro rata* Allocation Agreement applies and Olin is precluded from now arguing otherwise. As this Court may recall, in the 1984 Action this Court granted the London Market Insurers' summary judgment motion against Olin on the

7

Remand Sites holding that specific enforcement of the Settlement Agreement was required to prevent Olin's breach. One of the Remand Sites was the McIntosh OU2 Site which, similar to Morgan Hill, was a partially released site. In its April 18, 2018 Opinion and Order, this Court held if London Market Insurers are found liable in a contribution claim, Olin's Remand Sites judgment "should be reduced by: 1) the $18,000,000 released as "Buy-Back Policies"; 2) all pre-July 31, 2009 damages, 3) the $10,000,000 automatic deduction from all claims, and 4) **any amount which does not exceed the $[1.3] million attachment point of the London policies in any given year after the remaining claim is allocated *pro rata* from 1952 to the present.**" *Olin Corp. v. Lamorak*, at *15 n.15 (emphasis added).

For the purposes of the instant motion, the London Market Insurers have relied upon the damages and operation period calculation most favorable to Olin's Morgan Hill Claims. Even utilizing these calculations, which in effect grant Olin every benefit of the doubt, there is no reasonable possibility that Olin's losses relating to the Morgan Hill Site would reach the London excess policies. Consequently, there is no justiciable controversy and the London policies should be dismissed from this action. *See Consolidated Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 216 (2002) (affirming the trial court's finding which "took the highest projection of damages by Con Edison's expert ($51 million), divided by the number of years named in the complaint (50), and thus determined that policies that attach at levels above $1.3 million were nonjusticiable because they would not be reached even if Con Edison prevailed at trial").

In order to allocate damages in the manner most favorable to Olin's claims, the London Market Insurers have allocated damages for the Morgan Hill Site using Olin's own damages allegations after applying the pre-Settlement Agreement costs deduction and the additional $10 million deduction, as required by the Settlement Agreement (e.g.: $8.9M). As the operations at

8

Morgan Hill took place *at least* from 1956 to 1996, a minimum forty-year allocation period is applied. LMI Statement of Material Facts, ¶ 30.

When Olin's non-released damages totaling $8.9 million are allocated across the minimum 40 years during which the Morgan Hill Site was operational, the annual allocation of damages totals $222,500. The lowest amount at which any of the 1953 to 1960 London excess policies attach is $1.3 million. *Id.* at ¶ 29. Furthermore, for the 1961 to 1970 excess policies that contain Non-Cumulation Clauses, which are three-year policies, the allocation per three-year policy is $667,500, also well below the $1,300,000 attachment point. Thus, Olin's Morgan Hill Claims undeniably fail to trigger any of the London Policies' attachment points in any given year and there is no justiciable controversy related to the Morgan Hill Site regarding the London Policies.

## IV. The 2009 Settlement Agreement Has Not Been Altered By Subsequent Court Decisions

Olin cannot walk away from the contractual commitments it made in 2009 based upon a change of law that took place in 2016. A settlement agreement is a contract that is binding and conclusive on the parties and must therefore be construed according to general principles of contract law. *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007). Furthermore, unless a contract explicitly provides otherwise, a contract incorporates the state of the law in existence at the time of its formation to fix obligations between the parties. *Gelfert v. Nat'l City Bank of New York*, 313 U.S. 221, 231 (1941); *Ronnen v. Ajax Elec. Motor Corp.*, 88 N.Y.2d 582, 589 (1996).

As this Court has previously noted, Olin does not dispute that the Settlement Agreement is a binding, enforceable contract. *Olin Corp v. Lamorak*, at *19. At the time of the 2009 Settlement Agreement, the law of the case was *pro rata* allocation -- meaning that if there were a determination of insurance coverage, each of Olin's policies in any given year would respond

9

only to the amount of damages that were pro rated for that year. *Olin Corp. v. Insurance Co. of North America*, 221 F.3d 307, 322-324 (2nd Cir. 2000). This is undoubtedly why Olin felt comfortable formally agreeing to a modified *pro rata* allocation scheme in the Settlement Agreement.

However, in 2016, the New York Court of Appeals issued its landmark *Viking Pump* decision wherein it held that excess insurance policies that contain certain non-cumulation clauses and prior insurance provisions are subject to an all-sums allocation, under which an insurer can be liable for all sums in respect of claims against its insured even if only a portion of the damages occurred during that insurer's policy periods. *Viking Pump*, at 260-264. When Olin provided notice of its Morgan Hill Claims, Olin stated it was evaluating a potential all-sums recovery based upon *Viking Pump*. LMI Statement of Material Facts, ¶ 24. Olin's demand for coverage appears to be premised on an all-sums allocation because, as discussed above, Olin's Morgan Hill Claims do not impact the London Policies when allocated in accordance with the terms of the Settlement Agreement. Olin's improper argument that the subsequent *Viking Pump* decision can rewrite or delete sections of the Settlement Agreement should be rejected.

As an initial matter, it should be noted that 2016 was not the first time that a policyholder successfully argued the Non-Cumulation Clause provided support for an all-sums allocation result. In 2001, the Delaware Supreme Court so ruled in the *Hercules* pollution coverage litigation. *Hercules, Inc. v. AIU Ins. Co.*, 784 A.2d 481, 493-94 (Del. 2001). It should also be noted that counsel for Hercules were the Dickstein Shapiro firm, who through the 1990's and 2000's were also counsel of record for Olin in the 1984 Action. Thus, at the time it agreed to the *pro rata* allocation scheme in the Settlement Agreement, Olin fully understood that there were non-New York courts that allowed an all-sums presentation.

In any event, Olin's argument that it can seek all sums from the London Market Insurers is directly contradicted by the express terms of the Settlement Agreement. The Settlement Agreement clearly and unambiguously changes the terms and conditions of the London Policies with respect to how property damages for pollution claims are allocated. *Id.* at ¶ 16-17. Specifically, the Settlement Agreement provides, in pertinent part:

> As to each Claim subject to Section VII Paragraph B, Olin and London Market Insurers agree that the terms and conditions of the London Policies (excluding for the avoidance of doubt the Buy Back Policies) shall apply as written **except** as provided in Section VII, Paragraphs C, D and E below.

*Id.* at ¶ 16 (emphasis added).

The above-referenced Section VII, Paragraph D is the Allocation Agreement at issue.[2] To the extent that the London Policies contain Non-Cumulation Clauses and prior insurance provisions (collectively referred to as "Condition C") that might have been interpreted differently after *Viking Pump*, the Settlement Agreement incontrovertibly preempts their application.

The clear and unambiguous terms of the Settlement Agreement are also consistent with the historical allocation dispute between Olin and the London Market Insurers prior to the settlement. During the litigation, a major disagreement between Olin and the London Market Insurers was how to allocate covered third-party property damage claims that involved damage that took place over many years or decades.[3] LMI Statement of Material Facts, ¶ 2; *see also* Affidavit of Simon Wright, ¶ 7. It was the London Market Insurers' position that property

---

[2] Paragraph C changes the notice provisions of the policies and Paragraph E requires a claim submission first be mediated.

[3] This issue was litigated involving multiple sites and included multiple site trials, rulings, and appeals. *See, e.g., Olin Corp. v. Insurance Co. of North America,* 221 F.3d 307, 322-324 (2nd Cir. 2000) (applying *pro rata* allocation to the London policies) and *Olin Corp. v. Certain Underwriters at Lloyd's, London,* 468 F. 3d 120 (2nd Cir. 2006) (costs of remediation should be allocated over the period in which property damage occurred, as nearly as possible according to the amount of property damage that occurred in each policy period including the passive migration or spread of contaminants).

damage should be allocated *pro rata* equally over the entire period of time that damage took place. LMI Statement of Material Facts, ¶ 4; *see also* Affidavit of Simon Wright, ¶ 8. It was Olin's position that it could allocate property damage over a shorter compressed period of time based upon site-specific expert and fact discovery and/or recover all sums of its claim from a single year of insurance regardless of when the property damage took place. LMI Statement of Material Facts, ¶ 5; *see also* Affidavit of Simon Wright, ¶ 9. The parties settled their dispute, which had the effect of dictating how future losses would be allocated. LMI Statement of Material Facts, ¶ 18; *see also* Affidavit of Simon Wright at ¶ 14. For sites owned and operated by Olin, the claim would be allocated *pro rata* over the years of the plants' operations. LMI Statement of Material Facts, ¶ 17. For third-party dumpsites, the claim would be allocated only over years for which Olin sent or arranged to dispose of wastes at such a site (and not allocated in every year that damage took place). *Id.*

In a 2009 email exchange made while negotiating the Settlement Agreement,[4] Olin's counsel explains the methodology underlying the Allocation Agreement, and ironically uses the Morgan Hill Claims as an exemplar. *Id.* at ¶ 20. At the time of this email, the parties had not yet agreed on the final terms of the Settlement Agreement; however, the email sets forth how the Allocation Agreement would work. Specifically, Olin proposed allocating losses *pro rata* across every year during which the manufacturing site released the relevant contaminant. *Id.* While the parties eventually agreed to allocate the losses across every year in which operations took place at the real property owned by Olin, Olin clearly understood that the losses related to the Morgan Hill Site were to be allocated on a *pro rata* basis.

---

[4] This email was produced in the 1984 Action by agreement of all parties on November 9, 2017 as part of the significant discovery undertaken relating to the disputed terms of the Settlement Agreement.

This is also consistent with how the London Market Insurers expected the Settlement Agreement to work. "The Condition C clause in the Olin policies are now irrelevant in my claims-handling duties because the settlement agreement dictates as to how future losses would be allocated." *Id.* at ¶ 19 (November 17, 2017 deposition testimony of Daniel DeBond, the London Market Insurers' corporate designee). "The agreement with Olin in substance provides that for claims where it is agreed or determined that there is coverage under the subject London Market insurance policies, then: any third-party pollution claims relating to real property owned at any time by Olin, the property damage relating to any pollution claim must be allocated *pro rata* equally over the entire period of time that any operations took place on any part of the property Olin owned." Affidavit of Simon Wright, ¶ 15.

The all-sums allocation discussed in *Viking Pump* simply does not apply in light of the express and unambiguous terms of the Settlement Agreement providing for *pro rata* allocation. Accordingly, the London Market Insurers respectfully request that this Court enforce the Allocation Agreement as written and dismiss Olin's Complaint seeking coverage under the London Policies based upon a lack of justiciability.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Defendants Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies respectfully request this Court grant their motion seeking summary judgment and dismiss this action, which seeks insurance coverage for the Morgan Hill Claims under the 1953 to 1970 London Policies based upon a lack of justiciability, and further request such additional relief as this Court deems just and proper.

Dated: October 5, 2018

Respectfully submitted

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON AND CERTAIN
LONDON MARKET INSURANCE
COMPANIES


By their attorneys,

_____
Matthew B. Anderson, Esq. (MA 9145)
John McAndrews, Esq. (JM 5457)
Alejandro H. Hidalgo, Esq. (AH 8459)
MENDES & MOUNT, LLP
750 Seventh Avenue
New York, NY 10019-6829
(212) 261-8000

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2018, I caused to be served a true copy of the foregoing **DEFENDANTS CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND CERTAIN LONDON MARKET INSURANCE COMPANIES' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** via ECF on the following attorneys:

Katherine Rosoff, Esq.
Jenner & Block LLP
919 3rd Ave
New York, NY 10022

Peter J. Brennan, Esq.
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654
*Attorneys for Plaintiff*

/s/ Matthew B. Anderson
_____
Matthew B. Anderson (MA 9145)