IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
OLIN CORPORATION,

    *Plaintiff*,

CERTAIN UNDERWRITERS AT LLOYD'S
LONDON and CERTAIN LONDON
MARKET INSURANCE COMPANIES,

    *Defendants.*
---------------------------------------------------------------X

Civil Action No. 18-CV-8197 (JSR)

**DEFENDANTS CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND CERTAIN LONDON MARKET INSURANCE COMPANIES' ANSWER AND COUNTERCLAIMS TO PLAINTIFF OLIN CORPORATION'S COMPLAINT**

Defendants Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies (collectively "London Market Insurers") each of whom respectively subscribed, for itself and not for one another, to several shares of certain of the 1953 to 1970 insurance policies of Olin Corporation ("Olin") as identified on Exhibit A and Exhibit B, respectively, by and through their attorneys, pleading collectively as and for their Answer and Counterclaims to Olin's Complaint, state as follows:

**NATURE OF THE ACTION**

1. To the extent the averments in Paragraph 1 of Olin's Complaint are a prayer for relief, no response is required. Otherwise, the London Market Insurers deny the remainder of the allegations of paragraph 1.

## PARTIES

2. Responding to Paragraph 2 of Olin's Complaint, the answering London Market Insurers deny knowledge or information sufficient to form a belief as to the truth of the matters asserted therein.

3. Responding to Paragraph 3 of Olin's Complaint, the answering London Market Insurers admit only that they are comprised of (i) individuals, all or most of whom are residents and subjects of the United Kingdom of Great Briton and Northern Ireland or corporations, all or most of which are organized pursuant to the laws of the United Kingdom, and (ii) insurers that severally subscribed to certain 1953 to 1970 insurance policies in favor of Olin or certain of its predecessors in interest. The London Market Insurers further admit that those policies contained service of suit provisions that provided, for disputes arising under those policies, the London Market Insurers agreed to submit to the jurisdiction of any court of competent jurisdiction within the United States at the request of the insured. The London Market Insurers also admit that in the July 31, 2009 Confidential Settlement Agreement and Release ("Settlement Agreement") at issue in this action the parties agreed that any future coverage litigation between them shall proceed before a court of competent jurisdiction in New York, New York. The remaining allegations of Paragraph 3 are denied.

## JURISDICTION AND VENUE

4. Responding to Paragraph 4 of Olin's Complaint, the answering London Market Insurers state the allegations contained therein concern subject matter jurisdiction and are conclusions of law to which no responsive pleading is required. The remaining allegations of Paragraph 4 are denied.

5. Responding to Paragraph 5 of Olin's Complaint, the answering London Market Insurers state the allegations contained therein concern venue and are conclusions of law to which no responsive pleading is required.

**FACTS**

*London's and Others' Insurance Obligations To Olin*

6. Responding to Paragraph 6 of Olin's Complaint, the answering London Market Insurers deny knowledge or information sufficient to form a belief as to the truth of whether "over the last several decades, Olin has spent hundreds of millions of dollars remediating environmental damage at more than 100 sites across North America" or that "the costs and liabilities Olin incurred in connection with that damage" was insured by various other insurers under policies of comprehensive general liability insurance and umbrella and excess liability insurance. The London Market Insurers deny the remaining allegations of Paragraph 6.

7. Responding to Paragraph 7 of Olin's Complaint, the answering London Market Insurers deny the allegations contained therein.

8. Responding to Paragraph 8 of Olin's Complaint, the answering London Market Insurers deny knowledge or information sufficient to form a belief as to the truth of matters asserted therein.

9. Responding to Paragraph 9 of Olin's Complaint, the answering London Market Insurers deny knowledge or information sufficient to form a belief as to the truth of the matters asserted therein.

10. Responding to Paragraph 10 of Olin's Complaint, the answering London Market Insurers admit only that Olin made a demand for certain of its past and future Morgan Hill Site costs pursuant to the London Policies and the Settlement Agreement. The London Market Insurers also further admit that they denied that the past and future Morgan Hill Site claim

submitted by Olin currently triggered any London policy given the terms and conditions of the Settlement Agreement which, in part, requires pro rating the claim equally (minus all costs incurred prior to July 31, 2009 and an additional $10 million deductible, per claim) over the entire period of time that any operations took place on any part or parts of the real property Olin owned. The London Market Insurers otherwise accepted notice of the Morgan Hill Site claims under a full reservation of rights to dispute coverage under all relevant terms, conditions, and exclusions of the insurance policies and Settlement Agreement. The London Market Insurers deny the remainder of the averments of paragraph 10.

### *The Olin-London Settlement Agreement*

11.     Responding to Paragraph 11 of Olin's Complaint, the answering London Market Insurers admit only that Olin has been litigating various environmental insurance coverage claims for decades in the United States District Court for the Southern District of New York against certain of its other insurers that issued policies covering certain environmental damage claims made by Olin in the case captioned *Olin Corporation v. Lamorak Insurance Company, et al.,* Case No. 84 Civ. 1968. The London Market Insurers also admit that Olin and the London Market Insurers entered into the Settlement Agreement to settle or otherwise address certain of Olin's third-party property damage coverage claims against the London Market Insurers and that the Settlement Agreement released some, but not all, of Olin's claims against the London Market Insurers. The London Market Insurers also admit that they were dismissed with prejudice as to certain claims and without prejudice as to certain other claims from the 1984 Action in 2010. The London Market Insurers deny the remaining allegations of paragraph 11.

12. Responding to Paragraph 12 of Olin's Complaint, the answering London Market Insurers admit only that the Settlement Agreement's Section VII contains, in part, the quoted language contained in paragraph 12 of the Complaint.

## COUNT I – BREACH OF CONTRACT

13. Responding to Paragraph 13 of Olin's Complaint, the answering London Market Insurers repeat and incorporate by reference the foregoing responses as if set forth in full herein.

14. Responding to Paragraph 14 of Olin's Complaint, the answering London Market Insurers admit that only certain portions of any potential future Morgan Hill Claim would not be released by the Settlement Agreement. The London Market Insurers deny the remainder of the allegations contained therein.

15. Responding to Paragraph 15 of Olin's Complaint, the answering London Market Insurers deny the allegations contained therein.

16. Responding to Paragraph 16 of Olin's Complaint, the answering London Market Insurers deny the allegations contained therein.

17. Responding to Paragraph 17 of Olin's Complaint, the answering London Market Insurers deny the allegations contained therein.

18. Responding to Paragraph 18 of Olin's Complaint, the answering London Market Insurers deny the allegations contained therein.

19. Responding to Paragraph 19 of Olin's Complaint, the answering London Market Insurers deny the allegations contained therein.

20. Responding to Paragraph 20 of Olin's Complaint, the answering London Market Insurers deny the allegations contained therein.

## COUNT II – DECLARATORY JUDGMENT

21. Responding to Paragraph 21 of Olin's Complaint, the answering London Market Insurers repeat and incorporate by reference the foregoing responses as if set forth in full herein.

22. Responding to Paragraph 22 of Olin's Complaint, the answering London Market Insurers deny the allegations contained therein.

23. Responding to Paragraph 23 of Olin's Complaint, the answering London Market Insurers deny the allegations contained therein.

24. Responding to Paragraph 24 of Olin's Complaint, the answering London Market Insurers deny the allegations contained therein.

## AFFIRMATIVE DEFENSES

The London Market Insurers allege the following Affirmative Defenses:

### FIRST AFFIRMATIVE DEFENSE

Olin's claims are barred by the applicable statute of limitations.

### SECOND AFFIRMATIVE DEFENSE

Some or all of Olin's claims or assertions against the London Market Insurers are barred in whole or in part by release, waiver, laches, accord and satisfaction, or estoppel.

### THIRD AFFIRMATIVE DEFENSE

Olin's claims are barred by the terms, conditions, and releases as set forth in the Settlement Agreement.

### FOURTH AFFIRMATIVE DEFENSE

Olin's Morgan Hill Claims do not present a justiciable controversy because its property damage claims do not impact any London excess policy period when: 1) all costs incurred by Olin pre-July 31, 2009 are subtracted from the claims; 2) an additional $10 million deductible

per claim is applied; and 3) the remainder of Olin's claims are allocated *pro rata* equally over the entire period of time that any operations took place on any part or parts of the real property Olin owned (all three of which are required by the Settlement Agreement).

## FIFTH AFFIRMATIVE DEFENSE

Olin's claims or assertions are barred, in whole or in part, by the doctrine of unclean hands because Olin has failed to fulfill its contractual obligations under the terms of the Settlement Agreement.

## SIXTH AFFIRMATIVE DEFENSE

By contractual agreement, Olin is barred from litigating certain of its claims as the Settlement Agreement requires disputes relating to the scope of insurance coverage under the London policies shall first be submitted to a mediator agreed upon by the parties.

## SEVENTH AFFIRMATIVE DEFENSE

Olin's claims are barred by the terms, conditions, and exclusions as set forth in the insurance policies.

## EIGHTH AFFIRMATIVE DEFENSE

Olin's alleged Morgan Hill Claims and Liabilities do not constitute an "occurrence" as defined by the London policies.

## NINTH AFFIRMATIVE DEFENSE

Olin's alleged Morgan Hill Claims and Liabilities were not fortuitous and did not arise from an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly or unintentionally resulted in personal injury or property damage liability during the policy period and, accordingly, no coverage is afforded under the London Market Insurers' policies.

## TENTH AFFIRMATIVE DEFENSE

There is no coverage for some or all of Olin's claims under the London Market Insurers' policies to the extent that there was, injury, damage and/or loss which did not take place during any effective period of coverage allegedly provided by the London Market Insurers.

## ELEVENTH AFFIRMATIVE DEFENSE

There is no coverage for some or all of Olin's claims under the London Market Insurers' policies to the extent that the claims are not based upon "property damage" and/or "personal injuries" as defined in any of the London Market Insurers' policies at issue.

## TWELFTH AFFIRMATIVE DEFENSE

There is no coverage provided under any alleged London Market Insurers' policy for damage to Olin's own property.

## THIRTEENTH AFFIRMATIVE DEFENSE

To the extent that costs and expenses were neither reasonable nor necessary or were incurred voluntarily by Olin without the prior written consent of the London Market Insurers, there is no coverage under the London Market Insurers' policies at issue herein.

## FOURTEENTH AFFIRMATIVE DEFENSE

The London Market Insurers' policies do not provide coverage for costs and expenses incurred by Olin in the ordinary course of its business. The London Market Insurers have no obligation under the subject policies to the extent that coverage is sought for such ordinary business costs and expenses.

## FIFTEENTH AFFIRMATIVE DEFENSE

Certain of the London Market Insurers' policies do not cover the salaries or fees of Olin's employees. To the extent Olin's claims include such costs, Olin's claim is barred.

## SIXTEENTH AFFIRMATIVE DEFENSE

Some or all of the amounts for which coverage may be sought in this action may not constitute sums the London Market Insurers are obligated to pay as "damages" within the meaning of the subject policies.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The London Market Insurers' policies at issue herein do not provide coverage for claims or losses alleged to be based upon or attributable to Olin's willful or deliberate noncompliance with any statute, regulation, ordinance or instruction of any government body or public policy.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Olin's claims against London Market Insurers are barred to the extent that Olin has not complied with its obligation to provide assistance and cooperation to the London Market Insurers as required by the London Market Insurers' policies.

## NINETEENTH AFFIRMATIVE DEFENSE

To the extent the policies of insurance issued or subscribed to by the London Market Insurers are held to provide coverage for the alleged claims against Olin, such coverage being expressly denied, such coverage is limited by the ultimate net loss provision of such policies.

## TWENTIETH AFFIRMATIVE DEFENSE

If coverage exists at all under the subject policies, such coverage extends only to each of the London Market Insurers' several share of such subject policies' limits, and not to any other shares, layers or years provided by other insurers.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Olin's claims may be barred, in whole or in part, by reason of the existence of other insurance policies, including policies with respect to which the London Market Insurers' policies were previously, subsequently or contemporaneously effective, and by reason of the "Other Insurance" clause in the insurance policies subscribed to by the London Market Insurers.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Olin failed to comply with the "Loss Payable" provisions of the London Market Insurers' policies, including, but not limited to, failing to make a definite claim for any loss for which the underwriters may be liable within twelve months after Olin paid an amount of ultimate net loss in excess of the amount borne by Olin.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

To the extent the events for which recovery are sought are judicially determined to constitute insurable damages and determined not to be released under the Settlement Agreement (which is denied), London Market Insurers' liability under the 1953-1961 policies, is limited to and must be allocated to or among the periods during which the damage actually occurred.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Olin's damages require a reduction or setoff by the amounts or payments it received from its other Insurers or other third-parties for the Morgan Hill Site claims.

## COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, the London Market Insurers state as follows:

## FACTUAL ALLEGATIONS

1. Historically, in the litigation first filed in 1984 and currently captioned *Olin Corporation v. Lamorak Insurance Company* 84 Civ. 1984, Olin asserted various third-party property damage claims involving over a hundred sites against its historical insurers including, but not limited to, the London Market Insurer defendants that subscribed to the 1953 to 1970 London excess policies of Olin.

2. In that litigation, a major disagreement between Olin and the London Market Insurers was how to allocate covered third-party property damage claims that involved damage that took place over many years or decades.

3. It was the London Market Insurers' position that property damage should be allocated *pro rata* equally over the entire period of time that damage took place.

4. It was Olin's position that it could allocate the property damage over a shorter compressed period of time based upon site-specific expert and fact discovery and/or recover all

sums of its claim from a single year of its insurance regardless of when the property damage took place.

5. This issue was litigated involving multiple sites and included multiple site trials, rulings, and appeals. *See, e.g., Olin Corp. v. Ins. Co. of N. Am.*, 221 F.3d 307, 322-324 (2d Cir. 2000) (applying *pro rata* allocation to the London policies) and *Olin Corp. v. Certain Underwriters at Lloyd's, London*, 468 F.3d 120 (2d Cir. 2006) (costs of remediation should be allocated over the period in which property damage occurred as nearly as possible according to the amount of property damage that occurred in each policy period including the passive migration or spread of contaminants).

6. On July 31, 2009, after years of negotiations, the London Market Insurers and Olin entered into a full and final written settlement regarding the application of the London excess insurance policies to certain pollution claims.

7. The Settlement Agreement was the jointly drafted product of arms-length negotiations between Olin and the London Market Insurers with the benefit of advice of counsel, and the Parties agreed that it shall be so construed.

8. The Settlement Agreement is a contract by and among the London Market Insurers and Olin.

9. In exchange for over $48 million and other consideration provided by the London Market Insurers to Olin, Olin provided, in part, certain releases to the London Market Insurers of various pollution claims under the Policies.

10. As part of the Settlement Agreement, Olin released, remised, covenanted not to sue and forever discharged the London Market Insurers from and against all DJ Pollution Claims

(as defined by the Settlement Agreement) involving approximately 114 site claims, with Olin's express intention to reserve no rights or benefits whatsoever under the Policies.

11. All claims that Olin ever had or will have under the 1950 to 1970 Policies, which attached below $1.3 million, were also fully released or "bought back" by Olin.

12. For all future, non-fully released Pollution Claims, as defined by the Settlement Agreement (which includes the various Morgan Hill Claims), it was agreed that Olin shall first deduct its losses that it incurred and any and all payments made by it or its agents prior to July 31, 2009 from any future claim submission.

13. For each Pollution Claim that was not fully released, including the various Morgan Hill Claims, Olin also agreed to deduct an additional $10 million from its damages, per claim, prior to making a claim submission.

14. The London Market Insurers and Olin also agreed to various changes in the terms and conditions of the Policies (excess a $1.3 million attachment point) to address the potential non-released Pollution Claims going forward.

15. For example, the Settlement Agreement provided that if it is agreed or otherwise determined there is coverage under the Policies, any future third-party Pollution Claim shall be allocated: 1) *pro rata* equally over the entire period of time that any operations took place on any part or parts of the real property Olin owned; or 2) *pro rata* equally over the entire period of time that waste was disposed of or arranged to be deposed of by Olin at sites not owned or operated by Olin (the "Allocation Agreement").

16. Upon information and belief, Olin owned and operated the Morgan Hill Site and, accordingly, any future claim for that site's claims (after the removal of pre-July 2009 costs and

$10 million deductible per claim), shall be allocated *pro rata* equally over the entire period of time that any operations took place on any part or parts of the real property Olin owned.

17. On May 3, 2016, the New York Court of Appeals issued its landmark decision, *In re Matter of Viking Pump, Inc.*, 27 N.Y.3d 244 (2016). In *Viking Pump*, the Court of Appeals held that excess insurance policies that contain certain non-cumulation clauses and prior insurance provisions (such as certain of the released London Market Insurers' policies at issue here) are subject to an all-sums allocation, under which an insurer can be liable for all sums in respect of claims against its insured even if only a portion of the damages occurred during that insurer's policy periods.

18. Subsequent to the *Viking Pump* decision, in order to increase its insurance proceeds, Olin has engaged in a bad faith and repeated pattern of behavior in trying to avoid the terms and conditions of the 2009 Settlement Agreement.

19. First, in the 1984 action, when Lamorak Insurance Company asserted contribution claims against the London Market Insurers in 2017 ("Lamorak Contribution Claims"), Olin wrongly asserted that the Settlement Agreement's Judgment Reduction Clause (that applies to contribution claims) did not mean what it said and it did not apply to the then-pending contribution claims of Lamorak Insurance Company.

20. In a Court order dated, April 17, 2018, this Court rejected Olin's contention and granted the London Market Insurers' summary judgment motion holding, in part, that "ordering specific performance is necessary to prevent Olin's breach of the Settlement Agreement."

21. The Court also rejected Olin's broad reading of Section XX of the Settlement Agreement that, if adopted, "would lead to the absurd result that any of the London Market

13

Insurers who, in addition to directly insuring Olin, also reinsured Lamorak, would be deprived of the releases they bargained for with respect to their own 1950-1970 policies."

22. Olin also promised to reimburse all reasonable and necessary attorney's fees and amounts incurred by the London Market Insurers in defending the Lamorak Contribution Claims.

23. The London Market Insurers incurred attorney's fees and amounts in defending the various Lamorak Contribution Claims and have demanded Olin reimburse them for same.

24. To date, Olin has not reimbursed the London Market Insurers for all reasonable and necessary attorney's fees and amounts incurred by the London Market Insurers in defending the Lamorak Contribution Claims.

25. Once again, in asserting the various Morgan Hill Claims in the instant action, Olin in bad faith asserts that the Allocation Agreement of the Settlement Agreement does not apply as written.

26. Olin's reading of the Allocation Agreement is incorrect, and if adopted, would deprive the London Market Insurers of further releases they bargained for in 2009.

27. The London Market Insurers have incurred damages in responding to Olin's continued and repeated bad faith interpretation of the 2009 Settlement Agreement.

## COUNT I

### BREACH OF CONTRACT

28. Defendants, the London Market Insurers, hereby re-allege and incorporate the allegations of paragraphs 1 through 27 of the Counterclaims as the allegations of paragraphs 29 through 37.

29. Olin has breached the terms of the Settlement Agreement at issue in this action on multiple occasions.

30. Olin first breached the Settlement Agreement by refusing to apply the Judgment Reduction Clause in the London Market Insurers favor in response to the Lamorak Contribution Claims.

31. Olin further breached the Settlement Agreement by asserting an unsupportable position regarding Section XX of the Settlement Agreement that, if adopted, would have resulted in the absurd result of depriving the London Market Insurers of the Judgment Reduction Clause releases they bargained for in 2009.

32. As a result of this breach, the London Market Insurers were forced to commence litigation against Olin and assert various Rule 14 Claims against Olin to enforce the releases that Olin promised in 2009.

33. The London Market Insurers incurred fees and costs pursuing their successful Rule 14 Claims on the Judgment Reduction Clause against Olin.

33. Olin has also breached the Settlement Agreement by asserting an unsupportable position regarding the Settlement Agreement's Allocation Agreement involving the Morgan Hill Claims, that, if adopted, will result in the absurd result of depriving the London Market Insurers of the releases they bargained for in 2009.

34. The London Market Insurers are incurring fees and costs in defending this action.

35. Olin, by failing to reimburse the London Market Insurers for all reasonable and necessary attorney's fees and amounts incurred by the London Market Insurers in defending the Lamorak Contribution Claims, has breached the terms and conditions of the Settlement Agreement.

36. As a direct and proximate result of Olin's breaches of contract, which are continuing to date, the London Market Insurers have been deprived of their contractual rights.

15

37. As a direct and proximate result of Olin's breaches of contract, the London Market Insurers have sustained and will sustain damages in an amount to be determined at trial.

## RELIEF REQUESTED

WHEREFORE, the London Market Insurers pray for judgment in their favor and against Olin as follows:

a) For an Order enforcing the releases contained in the Settlement Agreement for the Morgan Hill Site, which include 1) a release of all damages of Olin incurred prior to July 31, 2009; 2) a release of an additional $10 million from Olin's claims; and 3) a release of all costs that do not impact an excess London policy layer when pro rated equally over the entire period of time that any operations took place on any part of parts of the real property Olin owned.

b) Award Defendants, the London Market Insurers, the costs, including reasonable attorney's fees, they incurred in defending the various Lamorak contribution claims;

c) Award Defendants, the London Market Insurers, the costs, including reasonable attorney's fees, they incurred in asserting their Rule 14 Claims to enforce the Judgment Reduction Clause against Olin.

d) Award Defendants, the London Market Insurers, its costs, including reasonable attorney's fees; and

e) Grant such further relief as the Court may deem just and proper.

Respectfully submitted

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON AND CERTAIN
LONDON MARKET INSURANCE
COMPANIES

By their attorneys,

_____
Matthew B. Anderson, Esq. (MA 9145)
John McAndrews. Esq. (JM 5457)
Alejandro H. Hidalgo, Esq. (AH 8459)
MENDES & MOUNT, LLP
750 Seventh Avenue
New York, NY 10019-6829
(212) 261-8000

Dated: October 17, 2018

**EXHIBIT A**

Anglo French
British Aviation Insurance
Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of (Excess Insurance Company Ltd and/or London & Edinburgh Insurance Company Ltd as successor to London & Edinburgh General Insurance Company Ltd))
Certain 1953 to 1970 Underwriters at Lloyd's, London
Dominion Insurance Company
Eagle Star Ins. Co.
Edinburgh No. 2 A/C
Gibbon A34 Group: (Alba General Insurance Co. Ltd.)
Gibbon B Group: (National Casualty Company)
Gibbon C14 Group: (Alba General Insurance Co. Ltd.)
Gibbon D15 Group: (Alba General Insurance Company Limited, Helvetia-Accident Swiss Insurance Company, Swiss National Insurance Co. Ltd.)
Motor Union AVN
National Casualty Company of America Ltd. Per HSW
National Casualty Company Per HSW
River Thames, River Thames Ins. Co.
Royal Scottish Insurance Co.
Scottish Lion
Stronghold Insurance Company Limited
The Anglo Saxon Insurance Association
The Dominion Insurance Co. Ltd.
Threadneedle Ins. Co.
U.M.A. C/O Dominion Ins. Co: (The Royal Scottish Insurance Company Limited, Trent Insurance Company Limited)
World Auxiliary

**EXHIBIT B**

K17459
K23386
K23387
K25651
K32571
K32572
K32573
K44076
K44077
CK2819
K51633
K50932
K51634
59/5622
C2192
K66570
CU1036
CU1037
K66571
K66572
K66573
CU3098
CU3099
S6152

**CERTIFICATE OF SERVICE**

     I hereby certify that on October 17, 2018, I caused to be served a true copy of the foregoing **DEFENDANTS CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND CERTAIN LONDON MARKET INSURANCE COMPANIES' ANSWER AND COUNTERCLAIMS TO PLAINTIFF OLIN CORPORATION'S COMPLAINT** via ECF on the following attorneys:


Katherine Rosoff, Esq.
Jenner & Block LLP
919 3rd Ave
New York, NY 10022

and

Peter J. Brennan, Esq.
Jenner & Block LLP
353 N. Clark Street
Chicago, IL  60654

*Attorneys for Plaintiff*

                                                  Alejandro H. Hidalgo, Esq. (AH 8459)